IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00547-PAB-GPG

ZACH DURAN,

    Plaintiff,

v.

METRO TREATMENT OF COLORADO, L.P., d/b/a Grand Junction Treatment Center, and
COLONIAL MANAGEMENT GROUP, L.P.,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' Motion for Summary Judgment [Docket No. 38]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

Plaintiff Zach Duran is a Mexican citizen and permanent resident of the United States. Docket No. 47 at 11, ¶ 36.[2] Plaintiff is of Native American descent. *Id.* at 1, ¶ 1. Defendants Metro Treatment of Colorado, L.P. ("Metro") and Colonial Management Group, L.P. ("Colonial") own and operate a drug treatment center in Mesa

---

[1] All facts are undisputed unless otherwise noted.

[2] Defendants do not dispute this fact; however, they argue that the fact is not "material." Docket No. 52 at 4, ¶ 36. Whether a fact is material is a legal question, not a factual one, and thus cannot create a factual dispute. Thus, this fact is considered undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.vii ("The sole purpose of these procedures is to establish **facts** and determine which of them are in dispute" (emphasis added)).

County, Colorado known as the Grand Junction Treatment Center ("GJTC"). Docket No. 19 at 2, ¶¶ 10-15. On September 1, 2014, defendants hired plaintiff Zach Duran as the Program Director at GJTC. Docket No. 38 at 2, ¶ 1. At the time he was hired, plaintiff met all the advertised qualifications for the Program Director position. Docket No. 47 at 11, ¶ 38. Beginning in approximately September 2015, plaintiff's direct supervisor was Jessica Ellis ("Ellis"). Docket No. 38 at 3, ¶ 2.

On September 19, 2016, Ellis called GJTC in an attempt to speak with plaintiff. *Id.*, ¶ 3. GJTC staff informed Ellis that plaintiff was not at work. *Id.* Plaintiff had told staff the previous week that he would be going out of town and would not be at work on the 19th. *Id.*, ¶ 4.[3] Plaintiff did not tell Ellis before his absence that he would miss work on the 19th and did not arrange coverage for the clinic with Ellis in his absence. *Id.*, ¶ 5.[4] Plaintiff missed work on both the 19th and 20th and returned to work on the 21st. *Id.*, ¶ 8. In his role as Program Director, plaintiff was expected to notify Ellis that he was going to be absent and coordinate with her to cover the clinic. *Id.* at 4, ¶ 9. At the time, defendants had an "Attendance and Tardiness" policy, which stated that "[e]mployees absent for any reason must notify their supervisor" and that "[a]bsence without

---

[3] Plaintiff does not dispute this fact; however, he denies that the fact is "material." Docket No. 47 at 6, ¶ 19. Plaintiff purports to deny many facts on this basis. *See* Docket No. 47 at 6-10, ¶¶ 19, 21-26, 31. Whether a fact is material is a legal question, not a factual one, and thus cannot create a factual dispute. Thus, all facts denied on this basis are considered undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.

[4] Plaintiff does not dispute this fact; however, he denies the "implication" that this is the true reason for his termination. Docket No. 47 at 7, ¶ 21. Accordingly, the fact is considered undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.

notification . . . may result in disciplinary action, including dismissal." *Id*., ¶ 13.[5] Ellis planned to issue plaintiff a written warning for absence without prior notification or authorization. *Id*. at 5, ¶ 16. However, Frances Bolden, defendants' Regional Vice President for the Alabama and Western Region, and Debbie Porte, defendants' Senior HR Manager, determined that termination of plaintiff's employment was the appropriate sanction. *Id*., ¶ 17.[6] Defendants terminated plaintiff on September 27, 2016. Docket No. 19 at 5, ¶ 45. After plaintiff's discharge, defendants hired a white male as GJTC's program director. Docket No. 47 at 12, ¶ 42.

On January 13, 2017, plaintiff filed a charge against defendants with the Equal

---

[5] Plaintiff denies this fact on two grounds. First, he contends that he "lacks sufficient knowledge to admit or deny" the fact. Docket No. 47 at 9, ¶ 29. However, this denial does not "establish the . . . presence of a genuine dispute," as required by Fed. R. Civ. P. 56(c)(1)(B). Second, plaintiff contends that the employment policy that defendants rely on "may or may not be the . . . policy which was in place at the time" of plaintiff's termination. Docket No. 47 at 9, ¶ 29. Plaintiff filed a motion to strike the employment policy on this basis. Docket No. 42. As an initial matter, plaintiff failed to confer with defendants before filing the motion to strike. *See* D.C.COLO.LCivR. 7.1(a). Although plaintiff suggests that his motion is brought pursuant to Fed. R. Civ. P. 12(f) (and therefore exempt from the duty to confer), Rule 12(f) only applies to a "pleading." Defendants' exhibit in support of its motion for summary judgment is not a pleading. Even overlooking plaintiff's failure to confer, the motion fails. One ground for challenging evidence on summary judgment is to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Plaintiff's motion to strike, however, fails to explain why the employment policy, which plaintiff admits that he produced during his initial disclosures, would not be admissible in evidence. *See* Docket No. 42 at 1. Thus, the Court will deny plaintiff's motion to strike and considers this fact undisputed for the purpose of this motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.

[6] Plaintiff generally denies the factual statements in defendants' statement of undisputed material facts ¶ 17. *See* Docket No. 47 at 11, ¶ 33. However, he cites to no evidence in the record disputing the factual statements. Therefore, the facts are considered undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.

3

Employment Opportunity Commission ("EEOC").  Docket No. 19 at 2, ¶ 20.  On December 7, 2017, plainitff received a Notice of Right to Sue from the EEOC.  *Id*., ¶ 21.  On March 7, 2018, plaintiff filed this lawsuit.  Docket No. 1.  In the operative complaint, plaintiff asserts two claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., alleging that plaintiff was unlawfully terminated on the basis of his (1) race and (2) national origin.  Docket No. 19.  On January 14, 2019, defendants moved for summary judgment on both claims.  Docket No. 38.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*.  Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

#### A. Objections to Discovery Orders

Plaintiff has filed an Objection to Magistrate's Orders on Discovery [Docket No. 51], objecting to two discovery orders entered by Magistrate Judge Gordon P. Gallagher. Following the close of discovery, plaintiff alleged that defendants committed two discovery violations during Ellis's deposition. First, plaintiff argued that "[d]efense counsel improperly directed [E]llis not to answer four questions on the grounds of relevance." Docket No. 40-1 at 2. The questions related to whether any GJTC patients had died from a methadone overdose after plaintiff's termination and whether any lawsuits alleging medical negligence had been filed against defendants after plaintiff's

5

termination. *Id*. Second, plaintiff argued that defense counsel engaged in abusive conduct by making numerous interruptions and objections and that defendants' corporate representative engaged in abusive conduct during Ellis's deposition by "sp[eaking] sarcastically to the [p]laintiff in mocking Spanish and [laughing] derisively in his face." *Id*. at 4. As a remedy for both alleged discovery violations, plaintiff requested that the Court order Ellis to sit for a second deposition and order defendants to pay fees and costs of both depositions. *Id*. at 3-4. Magistrate Judge Gallagher held hearings on the two disputes on January 28, 2019 and February 1, 2019. Docket Nos. 40, 49. Magistrate Judge Gallagher denied plaintiff's request, holding that (1) discovery on the topic of medical negligence was not relevant pursuant to Fed. R. Civ. P. 26, and (2) defendants' deposition conduct did not violate a statute or court rule. *Id*.

When reviewing magistrate judge orders on non-dispositive matters, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed R. Civ. P. 72(a). On review of the record, the Court finds no clear error in Magistrate Judge Gallagher's rulings. As to the first ruling, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Magistrate Judge Gallagher ruled that plaintiff's questions, which aimed to discover possible medical negligence by defendants, were not relevant to plaintiff's claims, which allege that he was illegally terminated on the basis of his race or national origin. Contrary to plaintiff's objection, which cites a since-amended version of Fed. R. Civ. P. 26, Magistrate Judge Gallagher applied the correct legal standard in reaching this conclusion. *See* Docket No. 51 at 2; *see also* Fed. R. Civ. P. 26 advisory

6

committee's note to the 2015 amendments (noting that the phrase "reasonably calculated to lead to the discovery of admissible evidence" has been deleted because it "has been used by some, incorrectly, to define the scope of discovery").

As to the second ruling, plaintiff argues that the magistrate judge failed to "account for or apply" Fed. R. Civ. P. 30(d)(2) and D.C.COLO.LCivR 30.3. However, the magistrate judge's order states that "the Court is [n]ot ordering/allowing a new deposition of [Ellis] as [p]laintiff urges is due him because of an alleged violation of statute or court rule." Docket No. 49 at 1. Thus, the record reflects that the magistrate judge took into consideration Fed. R. Civ. P. 30(d)(2) and D.C.COLO.LCivR 30.3 in reaching his ruling. The remainder of plaintiff's objection is essentially an argument that the magistrate judge came to the wrong conclusion. *See* Docket No. 51 at 4, ¶ 15 (arguing that a statement made by the magistrate judge was "contrary to the evidence before it"). The record reflects that the magistrate judge reviewed the deposition transcript, accepted two exhibits offered by plaintiff, and heard argument from both parties in a hearing that lasted nearly an hour. Docket No. 49. Upon review of the record, the Court sees no reason to disturb the magistrate judge's conclusion. *See Fish v. Kobach*, 267 F. Supp. 3d 1297, 1301 (D. Kan. 2017) ("The clearly erroneous standard [for reviewing a decision of a magistrate judge] requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). The Court thus concludes that neither order was "clearly erroneous or contrary to law" and overrules plaintiff's Objection to Magistrate's Orders on Discovery [Docket No. 51].

### B. Title VII Discrimination Claims

Plaintiff alleges that he was terminated because of his race and national origin in violation of Title VII. Defendants move for summary judgment on both of plaintiff's unlawful termination claims. Docket No. 38. Although Title VII recognizes that race and national origin are distinct bases upon which to rest a discrimination charge, *see* 42 U.S.C. § 2000e-2(a)(1), "in certain factual contexts, the demarcation line separating the two forms of discrimination may be quite faint or virtually indiscernible." *Lucero v. Sandia Corp.*, 495 F. App'x 903, 906 n.1 (10th Cir. 2012) (unpublished); *see also Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (noting that "courts have also recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case"). Here, the distinction between plaintiff's race discrimination claim and his national-origin discrimination claim is virtually indiscernible, as the allegations supporting both claims are identical. *See* Docket No. 19 at 9, ¶ 68 (plaintiff supporting his national-origin claim by "incorporat[ing] by reference all the paragraphs of [the] [c]omplaint"). Thus, the Court considers both claims together.

Under Title VII of the Civil Rights Act of 1964, as amended, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination indirectly, using the *McDonnell Douglas* three-part burden-shifting framework. *Hiatt v.*

*Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At step one of the *McDonnell Douglas* inquiry, a plaintiff must establish a prima facie case of discrimination. *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004). If the defendant produces a legitimate reason, then the court must grant the defendant summary judgment, unless the plaintiff can show a genuine issue of material fact as to whether the stated reason for the adverse action is pretextual. *Id*.

### 1. Prima Facie Case

A plaintiff has established a prima facie case if the undisputed facts, viewed in the light most favorable to the plaintiff, would allow a jury to draw an inference of discrimination. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). An inference of discrimination arises when there is a "logical connection" between each element of the prima facie case and the alleged discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000). The *McDonnell Douglas* framework requires that plaintiff must make only a *de minimis* showing to establish a prima facie case of discrimination. *Bird v. West Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016).

The parties dispute what elements plaintiff must show in order to establish a prima facie case of discrimination. Plaintiff argues that his prima facie case can be met

9

by showing that "(1) [he] was a member of a protected class (2) who was terminated (3) despite being qualified for his position, and (4) the job [was not] eliminated." Docket No. 47 at 15 (citing *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 883 (10th Cir. 2018)). Defendants, however, contend that plaintiff must show he "(1) belongs to a protected class, (2) suffered [an] adverse employment action, and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Docket No. 38 at 5 (citing *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)). Prongs (1) and (2) of both proffered tests are substantially similar, and the parties do not appear to dispute that (1) plaintiff, by virtue of his Mexican citizenship and Native American ancestry, is a member of a protected class; and (2) defendants terminated plaintiff's employment at GJTC. *See* Docket No. 47 at 11, ¶ 36; Docket No. 38 at 5, ¶ 17; *see also Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998) (noting that "[a]ctions such as . . . terminations are by their nature adverse"). Thus, the crux of the parties' disagreement is whether plaintiff must show (a) he was terminated despite being qualified for his position and the job was not eliminated, or (b) his termination occurred under circumstances giving rise to an inference of discrimination.

The parties' proffered tests are reconcilable. Although the Tenth Circuit has noted that "a common element critical to all prima facie cases is that the plaintiff must demonstrate that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination," this standard is "flexible" because "the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." *Bird*, 832 F.3d

at 1200 (internal quotations omitted). The Tenth Circuit has also noted that the purpose of the first step of the *McDonnell Douglas* framework is to "exclude the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job." *Fassbender*, 890 F.3d at 884 (internal quotations omitted). Given that only a *de minimis* showing is required to establish plaintiff's prima facie case, the Court holds that an "inference of unlawful discrimination" may be shown, at the prima facie stage, by the plaintiff showing that he was qualified for the position and the job was not eliminated. *See Perry*, 199 F.3d at 1140 ("When viewed against a backdrop of historical workplace discrimination, an employee who belongs to a racial minority and who eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job, has at least raised an inference that the termination was based on a consideration of impermissible factors.").

Defendants, relying on *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005), argue that the standard articulated by the Court "applies when a plaintiff's discharge was the result of a position elimination and not, as here, where the discharge was due to unsatisfactory conduct." *See* Docket No. 52 at 6. Defendants' argument relies on a misreading of *Plotke*. In *Plotke*, the district court dismissed plaintiff's gender discrimination claim because she failed to show that her position remained after her discharge. *Plotke*, 405 F.3d at 1099. The Tenth Circuit reversed, holding that the fact the position was not eliminated is merely "*one way* a plaintiff may establish a prima facie case." *Id*. at 1100. Confirming that "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred

11

under circumstances which give rise to an inference of unlawful discrimination," the court held that this element "is a flexible one that can be satisfied differently in varying scenarios." *Id*. Although defendants claim that *Plotke* therefore requires plaintiff to make a different showing of an "inference of unlawful discrimination" in the prima facie case when defendants allege that dismissal was due to unsatisfactory conduct, the Tenth Circuit has never indicated that "unsatisfactory conduct" is a circumstance that the *McDonnell Douglas* framework was intended to screen for at the first step. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (holding that the purpose of the prima facie step of the framework is to "eliminate[] the most common nondiscriminatory reasons" for an adverse action); *Plotke*, 405 F.3d at 1099 ("The most common nondiscriminatory reasons for discharge in a termination case are (1) 'lack of qualification' or (2) 'elimination of the job.'" (quoting *Kendrick*, 220 F.3d at 1229)). The Court does not read *Plotke* to require plaintiff to offer more evidence at the prima facie stage when an employer contends that discharge is due to unsatisfactory conduct, and defendants have failed to cite a case where *Plotke* was applied to require a plaintiff to make such a showing. In effect, defendants' reading of *Plotke* requires the Court to skip directly to the second step of the framework – whether the employer has a legitimate, nondiscriminatory reason for the discharge – and deny plaintiff's claims at the first step based on that reason. The Court rejects that interpretation.

The Court finds that plaintiff has met his *de minimis* burden of establishing a prima facie case of Title VII discriminatory termination. Plaintiff has shown that he was qualified to hold the Program Manager position at GJTC at the time he was hired. *See*

Docket No. 47 at 11, ¶ 38. After plaintiff's termination, defendants did not eliminate the job, but instead hired a replacement. *See id*. at 12, ¶ 42; *see also Plotke*, 405 F.3d at 1101 (noting that, to establish an inference of discriminatory motive, plaintiff may "rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position"). Thus, plaintiff has established his prima facie case.

### 2. *Facially Nondiscriminatory Reason for Discharge*

Defendants have stated legitimate, non-discriminatory reasons for terminating plaintiff, namely, plaintiff's failure to attend work on September 19 and 20, 2016 without giving his supervisor prior notice, and plaintiff's poor judgment in doing so. Docket No. 38 at 5, ¶ 17. It is undisputed that plaintiff's actions were grounds for termination under defendants' attendance policy that "[a]bsence without notification . . . may result in disciplinary action, including dismissal," and that "failure to call your supervisor . . . may result in disciplinary action." *Id*. at 4, ¶ 13. Plaintiff describes defendants' reasons as "demonstrably false," but does not demonstrate why or how they are false. *See* Docket No. 47 at 16, ¶ 55. Thus, summary judgment is appropriate unless plaintiff can show that there is a triable issue of material fact as to whether defendants' stated reasons are pretextual.

### 3. *Pretext*

A plaintiff may show pretext by demonstrating that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's stated reason such that "a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted

13

nondiscriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996) (internal quotation marks omitted)). The Court's role is to prevent and redress employment discrimination and not to act as a "'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003)); *see also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment.").

Although a plaintiff "may not be forced to pursue any particular means of demonstrating that [a defendant's] stated reasons are pretextual," the Tenth Circuit has identified three ways plaintiffs typically make a showing of pretext: "(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick*, 220 F.3d at 1230 (internal citations omitted).

Plaintiff offers three arguments as to why defendants' facially legitimate reasons are pretextual. First, plaintiff argues that defendants' explanation as to who made the decision to fire plaintiff has evolved over time. Docket No. 47 at 16-17. Second,

14

plaintiff argues that he did not "no call, no show," as defendants represented to the EEOC. *Id*. at 17-18. Third, plaintiff argues that he did not show poor judgment in failing to call Ellis prior to his absence because he was not required to do so. *Id*. at 18-19. These are all arguments that the defendants' stated reason for the adverse employment action was false. *See Kendrick*, 220 F.3d at 1230.

None of plaintiff's arguments demonstrate that defendants' proffered reasons for terminating plaintiff were pretextual. Pretext is "evidence that the legitimate reasons offered by the defendant were not its true reasons," allowing the factfinder "to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147 (2000); *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007). As to plaintiff's first argument, defendants have never used which employees were responsible for firing plaintiff as a pretext for why plaintiff was terminated. Rather, plaintiff attempts to identify an inconsistency among defendants' witnesses. *See* Docket No. 47 at 17-18. However, that inconsistency is not evidence of pretext; even if a reasonable fact finder thought defendants' position as to who fired plaintiff was implausible, plaintiff provides no reason why the identity of the person who fired plaintiff calls into question the reason why he was terminated. *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. 2015) ("Mere conjecture that the employer's explanation is pretext . . . is insufficient . . . to show pretext."). Second, the question of whether plaintiff was fired for "no call, no show" is a dispute over semantics. The parties dispute the meaning of the phrase. *Compare* Docket No. 47 at 17-18 *with*

Docket No. 52 at 8. However, plaintiff fails to offer evidence that he was fired for not calling during his absence. Rather, all the evidence indicates that plaintiff was fired for failing to notify Ellis before plaintiff was absent from work. *See, e.g.*, Docket No. 38 at 4, ¶ 15 ("[Plaintiff] knew he was supposed to notify his supervisor if he was going to be absent from work"). While defendants may have called that "no call, no show," plaintiff's culpable behavior was plaintiff's failure to clear the days off with Ellis. Finally, plaintiff's argument that he did not show poor judgment is misplaced. It is not the Court's role to second-guess defendants' view of plaintiff's judgment. *See Dillon Cos., Inc.*, 468 F.3d at 1250; *see also Bennett*, 792 F.3d at 1268 (noting that courts will not "replace [an employer's] opinion of best practices with either an employee's opinion or [the court's] own"). Defendants' written attendance policy indicates that "[a]bsence without notification . . . may result in disciplinary action, including dismissal." *See* Docket No. 38 at 4, ¶ 13. When an employer's policy says that an employee is subject to discipline for violating a company rule, it is not evidence of pretext that an employee was disciplined for violating that rule. Plaintiff has failed to identify a genuine issue of material fact as to whether defendants' stated reasons for terminating him – that he failed to attend work without giving his supervisor prior notice in violation of company policy and that he exercised poor judgment in doing so – were pretextual. *See Sandoval*, 388 F.3d at 1321.[7]

---

[7] Although it is not clear from plaintiff's brief, one broad construction of plaintiff's argument is that the facts as to who fired plaintiff and why are, in fact, disputed, and therefore a reasonable factfinder could find defendants' proffered reason for plaintiff's termination unworthy of credence. However, as discussed previously, plaintiff's brief wholly fails to show that a factual dispute exists. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly . . . address another party's assertion of fact . . . the [C]ourt may . . .

Separately, plaintiff argues that defendants treated him differently than they did other program directors. This argument also fails. "[A] plaintiff may . . . show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." *Kendrick*, 220 F.3d at 1232. Plaintiff's argument is twofold: first, that he was "forced to work two full-time positions" at GJTC, one as Program Director and one as a counselor; second, that defendants' employees intentionally held people of Hispanic descent to a higher standard. Docket No. 47 at 19, ¶¶ 63-64.[8] First, as to plaintiff's alleged double workload, plaintiff does not identify any similarly-situated, nonprotected employees who only worked as either a Program Director or counselor. *See* Docket No. 47 at 19. Moreover, plaintiff does not explain how his double workload is related to a violation of work rules. *See id*. Thus, plaintiff cannot rely on the double workload argument to argue that the decision to terminate plaintiff was pretextual.

---

consider the fact undisputed for purposes of the motion); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3. Moreover, even the most generous reading of plaintiff's brief and supporting materials provides no evidence that he called Ellis before missing work on September 19, or that defendants' written attendance policy did not require him to call Ellis, and plaintiff does not cite a case in support of his position. *See* Docket No. 47 at 16-19. Plaintiff thus fails to explain why defendants' explanation for his termination is "so implausible that a jury could find it unworthy of credence." *See Conroy v. Vilsack*, 707 F.3d 1163, 1174 (10th Cir. 2013).

[8] Plaintiff also contends that defendants' corporate representative "spoke sarcastically to [plaintiff] in mocking Spanish and then laughed derisively in his face" during Ellis's deposition. Docket No. 47 at 19, ¶ 65. The Court notes that Magistrate Judge Gallagher ruled that defendants' conduct during the deposition did not violate a statute or court rule. Docket No. 49. Even accepting plaintiff's characterization of the evidence, plaintiff cites no authority for the proposition that deposition conduct by defendants' corporate representative, who was not being deposed, can give rise to an inference that defendants' prelitigation decision to terminate plaintiff was pretextual.

Second, as evidence that defendants' employees intentionally held people of Hispanic descent to a higher standard, plaintiff states that Anthony Palamo, an interim regional director, believed that defendants' employees held these beliefs. *See id*, ¶ 64. Plaintiff cites to his own deposition; however, this portion of the deposition is not attached to plaintiff's response and therefore plaintiff's argument lacks support. *Compare* Docket No. 47 at 19, ¶ 64 (citing plaintiff's deposition transcript at pages 90-96) *with* Docket No. 47-2 at 19-20 (plaintiff's deposition transcript jumping from page 74 to page 170). Even accepting *arguendo* plaintiff's characterization of the evidence, plaintiff has failed to offer any facts that show that he was treated differently from "similarly-situated, nonprotected employees who violated work rules of comparable seriousness." *See Kendrick*, 220 F.3d at 1232; *see also Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir. 1994) (noting that, to illustrate a "significant disparity" in the treatment of two groups of workers, the illustration must be based upon "a comparative analysis of similarly situated individuals"). Thus, the Court will grant summary judgment for defendants on both of plaintiff's claims.[9]

---

[9] Plaintiff filed a Motion for Leave to File Sur-Reply re: Defendants' Motion for Summary Judgment (ECF No. 38) [Docket No. 56] in response to defendants' reply brief. Granting leave to file a surreply is part of the "supervision of litigation" and thus falls within the discretion of the district court. *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191-92 (10th Cir. 2006). However, the Court must allow a non-movant to file a surreply to respond to any new arguments in the moving party's reply. *Id*. ("If the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials." (internal citations omitted)). Plaintiff contends that defendants' reply brief "contains a statement flatly contradicted" by its supporting document. Docket No. 56 at 1-2. As an initial matter, plaintiff failed to confer with defendants before filing the motion to file a sur-reply. *See* D.C.COLO.LCivR. 7.1(a). Although plaintiff suggests that his motion is brought pursuant to Fed. R. Civ. P. 56 (and therefore exempt from the duty to confer), Rule 56 applies only to motions for summary judgment, not motions to file a sur-reply. *Cf.*

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Objection to Magistrate's Orders on Discovery [Docket No. 51] is **OVERRULED**.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 38] is **GRANTED**.  It is further

**ORDERED** that plaintiff's Motion to Strike [Docket No. 42] is **DENIED**.  It is further

**ORDERED** that plaintiff's Motion for Leave to File Surreply Re: Defendants' Motion for Summary Judgment (ECF No. 38) [Docket No. 56] is **DENIED**.

**ORDERED** that judgment shall enter for defendants and against plaintiff on all claims.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

---

*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) (noting that filing a reply brief is a "supervision of litigation" question, as "Rule 56 neither authorizes nor forbids a reply brief by the party moving for summary judgment").  Moreover, as defendants point out, plaintiff does not contend that defendants' reply brief contains new materials or new arguments.  Rather, plaintiff's argument is that defendants are mischaracterizing the record.  *See* Docket No. 56 at 1-2.  Thus, the Court will deny plaintiff's motion, as defendants have not introduced a new argument or new material that requires the Court to allow plaintiff to respond.

DATED September 17, 2019.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge